IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

NGOC-CHI HUYNH and         §
TAI V. NYUYEN,              §
                                §
         Plaintiffs,       §
                                §
v.                             §      CIVIL ACTION NO. H-10-1303
                                §
CITY OF HOUSTON, TEXAS and   §
MARK LEIJA, Individually and   §
in his Official Capacity as    §
Police Officer of the City    §
of Houston,               §
                                §
         Defendants.      §

MEMORANDUM AND ORDER

Plaintiffs Ngoc-Chi Huynh and Tai V. Nguyen, naturalized U.S. citizens of Vietnamese origin, allege in their First Amended Complaint filed through counsel, that City of Houston Police Officer Mark Leija ("Leija") violated their rights under the First, Fifth, Fourteenth, and Fifteenth Amendments to the Constitution by issuing excessive citations related to the operation of their business and by sealing all of their slot machines.[1]  Plaintiffs also allege that the City of Houston ("the City") failed to provide adequate training and supervision of Officer Leija, to discipline officers for non-compliance with City policies, and to conduct a

---

[1] Document No. 11 at 7; Document No. 12 at 2.

proper investigation of the circumstances that led to the shutdown of their business.[2]

Pending is Defendants' Amended Motion to Dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure (Document No. 36).[3]  Based on the motion, response,[4] reply, and applicable law, the Court concludes as follows.

## I. Background

Plaintiffs contend the following events gave rise to the pending complaint: In 2003, Plaintiffs opened a game room business in Houston, Texas.[5]  The City of Houston issued a permit and documents that allowed them to open such business.[6]  Plaintiffs performed all the legal requirements to open and operate their

---

[2] Document No. 12 at 9-10.

[3] Defendants' Motion to Dismiss (Document No. 34) was made moot by the Amended Motion, and is therefore denied.

[4] Plaintiffs filed numerous exhibits in support of their response.  Document Nos. 39-42.  The court has exercised its discretion not to consider those exhibits because such consideration would necessitate converting the motion to dismiss into a motion for summary judgment.  FED. R. CIV. P. 12(b)(d); Ware v. Associated Milk Producers, Inc., 614 F.2d 413, 415 (5th Cir. 1980).

[5] Document No. 11 at 3.

[6] Id. at 6.

business.[7]  They did not sell food or drinks but provided free individually-wrapped snacks and canned drinks to their patrons.[8]

In 2008, Officer Leija and other police officers started to visit the game room and to issue citations for various municipal code violations.[9]  On their first visit to the game room, some police officers stood around observing customers while others "walked around [and] checked every single inch of the building, and about two officers [got] their citation booklet out and start[ed] writing."[10]  Plaintiffs contend they cooperated with the officers but the officers never showed them why they received the citations or how to correct the problems.[11]  When the inspection was completed, Plaintiffs asked Officer Leija why there were so many citations; he told them to sign the citations and to take them to court if they had any objections.[12]

Plaintiffs allege that officers issued from 20 to 60 different citations for bogus violations on each visit and often issued the same or similar citations without checking to see if the premises

---

[7] Id.

[8] Id. at 3.

[9] Id. at 3.  The record shows that Plaintiffs' business was closed sometime in October 2008.  Document No. 11 at 7.

[10] Id. at 3-4.

[11] Id. at 4.

[12] Id.

had been modified or repaired.[13]  Plaintiffs contend that on one occasion, Officer Leija issued a citation for an occupancy permit even though such a permit does not need to be renewed.[14]  On another occasion, Leija was stopped by another officer before issuing the citation for the occupancy permit.[15]

Plaintiffs claim that "[f]rom February 16, 2008[,] to the end of the year, Officer Leija occasionally stopped by with a unit and with the excused [sic] of checking on complaints and always walked out with no less than 60 citations issued."[16]  Plaintiffs maintain they "received the same citations for the same problem every time Officer Leija stopped by to check on complaints."[17]

Plaintiffs also contend that on one occasion, Officer Leija mocked their religious beliefs by making reference to a Buddha statue inside the game room and by joking with patrons that Plaintiffs' religion and the statue were not helping them.[18] Another police officer cautioned Leija to stop making fun of the statue and to do his job; Leija complied.[19]

---

[13] Id. at 3.

[14] Id. at 6.

[15] Id.

[18] Id. at 5.

[17] Id.

[18] Id.

[19] Id.

4

Plaintiffs contend that after the business was closed, Officer Leija contacted the owner of a business next to Plaintiffs' about whether Plaintiffs had re-opened the game room.[20]   Plaintiffs claim that Leija told the business owner that he "will kick and close all the 'Vietnamese' business owners [out] of that area."[21]

Plaintiffs further allege that Officer Leija gave false testimony in Municipal Court in a trial on Citation Number 2008 NT 0419679 for failure to clean ventilation filters when he misidentified the location of the air vent in question.[22]   The Plaintiffs concede that the jury found Leija's testimony more reliable and fined Plaintiffs $1,000.[23]

Plaintiffs seek compensatory and punitive damages from Defendants on these allegations under the Texas Torts Claims Act[24] and 42 U.S.C. §§ 1981 and 1983.[25]

Defendants, the City of Houston and Officer Mark Leija, move to dismiss Plaintiffs' § 1983 claims, asserting that they are barred by limitations, they would imply the invalidity of Plaintiffs' municipal court conviction, they are not ripe, and they

---

[20] Id.

[21] Id.

[22] Id. at 4.

[23] Id.

[24] TEX. CIV. PRAC. & REM. CODE ANN., ch. 101.

[25] Document No. 11 at 2, 7; Document No. 12.

are not supported by any constitutional violation.   Defendants further assert that Officer Leija is protected by qualified immunity and that the City cannot be held liable because Plaintiffs have failed to allege an official custom or practice of the City leading to any alleged violation of Plaintiffs' rights.   Defendants also move to dismiss the state tort claim because Plaintiffs have failed to allege facts that fall within the limited waiver of sovereign immunity in the Texas Torts Claims Act.[26]

## II. <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint.  <u>La Porte Constr. Co. v. Bayshore Nat'l Bank of</u>

---

[26] Document No. 36.

La Porte, Tex., 805 F.2d 1254, 1255 (5th Cir. 1986).  In ruling on a rule 12(b)(6) motion, the district court may rely only on the complaint and its proper attachments.  Fin. Acquisition Partners LP v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).  A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009).

## III. Discussion

Plaintiffs seek relief under 42 U.S.C. § 1983 for alleged violations of their constitutional rights.[27]  Section 1983 does not

---

[27] Document No. 11 at 2.  Plaintiffs indicate that they also seek relief under 42 U.S.C. § 1981 in paragraph 7 of their Amended Complaint under the heading, "Nature of the Action." Id.  They do

create substantive rights, but rather is merely a procedural rule
that provides a private cause of action for redressing a violation
of federal law or "vindicating federal rights elsewhere conferred."
Albright v. Oliver, 114 S. Ct. 807, 811 (quoting Baker v. McCollan,
99 S. Ct. 2689 (1979)).  "Thus, an underlying constitutional or
statutory violation is a predicate to liability under § 1983."
Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1574
(5th Cir. 1989).  To state a viable claim under § 1983, "a
plaintiff must (1) allege a violation of rights secured by the
Constitution or laws of the United States and (2) demonstrate that
the alleged deprivation was committed by a person acting under
color of state law."  Leffall v. Dallas Indep. Sch. Dist., 28 F.3d
521, 525 (5th Cir. 1994).  A § 1983 plaintiff must support his
claims with specific facts demonstrating a constitutional
deprivation and may not simply rely on conclusory allegations.
Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995).

A.   Limitations

      Defendants maintain that Plaintiffs' complaints regarding
citations issued more than two years before they filed the present

---

not, however, specifically seek relief under § 1981 in Counts 1, 2,
or 3 of the Amended Complaint or the paragraphs incorporated
therein.  Document No. 11 at 7; Document No. 12 at 2-5.  Therefore,
the Court does not address their claims under this statute.

complaint on April 22, 2010, including the citations issued on February 16, 2008, are barred by the statute of limitations.[28]

Because the Civil Rights Act does not provide a statute of limitations for claims brought under its provisions, courts borrow the statute of limitations from the law of the forum state. Wallace v. Kato, 127 S. Ct. 1091, 1094 (2007); Burrell v. Newsome, 883 F.2d 416, 418 (5th Cir. 1989). Texas has a two-year limitations period for personal injury actions. Stanley v. Foster, 464 F.3d 565, 568 (5th Cir. 2006); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002). "Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Slack v. Carpenter, 7 F.3d 418, 419 (5th Cir. 1993).

Plaintiffs do not dispute that claims against Leija and the City regarding citations issued before April 2008, are time-barred but contend that there were other citations issued within two years of the date they filed the present suit and that their claims with respect to these citations are not barred by limitations.[29] Plaintiffs do not specify the dates that Leija and his squad issued

---

[28] Document No. 36 at 11–12.

[29] Document No. 38 at 4.

these citations because they claim that Defendants have not produced the 1,000 to 2,000 citations that they requested.[30]

Plaintiffs' pleadings show that they had knowledge of some of the citations that Leija and his squad issued more than two years before Plaintiffs filed suit on April 22, 2010.  Plaintiffs' claims that accrued before April 22, 2008, which was two years before the date upon which Plaintiffs filed suit in 2010, are therefore time-barred and are properly dismissed with prejudice for failure to state a claim.

B.   Official Capacity Claims

A suit against Officer Leija in his official capacity as a City of Houston Police Officer, is a suit against the City of Houston.  See Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 483 (5th Cir. 2000).  Because Plaintiffs have sued the City of Houston, all duplicative official capacity claims arising under § 1983 against Officer Leija, if any, are subject to dismissal.

---

[30] Id.  Plaintiffs, however, attest in affidavits dated April 21, 2010, that Leija and the officers issued a total of 250 citations.  Document No. 1 at 12, 14.

C.   Qualified Immunity

Plaintiffs allege that Officer Leija violated his rights under the First, Fifth, Fourteenth, and Fifteenth Amendments.[31]   With respect to these constitutional claims alleged against him in his individual capacity, Officer Leija asserts the defense of qualified immunity.[32]

Public officials acting within the scope of their official duties are shielded from civil liability by the qualified immunity doctrine.   *See* Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738-39 (1982).   Government officials are entitled to such immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Id. at 2738.   Thus, to determine entitlement to qualified immunity, the court must determine whether (1) taken in the light most favorable to the party asserting the injury, whether the facts alleged show the officer's conduct violated a constitutional right; and if so (2) whether the right was clearly established at the time.   Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001); Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) (holding sequential two-step process not mandatory, courts could determine which prong to

---

[31] Document No. 11 at 7; Document No. 12 at 2.

[32] Document No. 36 at 5-6.

11

address first "in light of the circumstances of the particular case at hand").

Defendants argue that Officer Leija is entitled to qualified immunity because under the first prong Plaintiffs' allegations fail to rise to the level of a clearly established constitutional violation.[33]

Defendants are correct that Plaintiffs allege no facts that would give rise to a violation of the First, Fifth, or Fifteenth Amendments.[34]  Plaintiffs' pleadings do not show that Officer Leija

---

[33] Document No. 36 at 5-6.

[34] Plaintiffs assert in their jurisdictional statement that this suit alleges violations of the Sixth Amendment but they make no further allegations, factual or legal, that would give rise to a Sixth Amendment claim.  Document No. 11 at 2.  Therefore, this conclusory allegation has no merit.

Plaintiffs assert in paragraph 29 of the Amended Complaint under the section entitled "Facts," that Officer Leija "sealed all the machines" thereby, violating the Fourth Amendment by seizing their "personal property without a court order." Id. at 7. Plaintiffs do not separately state a Fourth Amendment violation in Counts 1, 2, or 3 of their Amended Complaint.  To the extent that Plaintiffs intend to assert a Fourth Amendment claim based on Officer Leija's sealing all of the machines "without a court order," however, Plaintiffs fail to allege specific facts demonstrating a constitutional deprivation.  For examples, Plaintiffs plead nothing to rule out the presence of exigent circumstances that required sealing the machines, immediate risks to the public from food or other public safety violations associated with the operation of the machines, or otherwise to specify *why* a court order was required and on what particular occasion or occasions.  Whether a search and seizure is unreasonable within the meaning of the Fourth Amendment is typically a fact-intensive inquiry.  In this instance, Plaintiffs' allegations are purely conclusory and inadequate "to raise a right to relief above the speculative level." Iqbal, 129 S. Ct. at 1949.

denied them the rights to free speech or press, the rights to assemble, to access the courts, or to present grievances as guaranteed by the First Amendment. U.S. Const. amend I.  Their only First Amendment complaint is that Officer Leija violated their right to the free exercise of religion because he once joked with customers about their religion and their Buddha statue until another officer admonished him.[35]   Plaintiffs do not allege that Officer Leija restrained them from exercising their religious beliefs pursuant to any law or municipal policy or ordinance by his jokes or comments regarding their religion.  *See* Sch. Dist. of Abington Tp., Pa. v. Schempp, 83 S. Ct. 1560, 1572 (1963) (noting that "[t]he Free Exercise Clause . . . withdraws from legislative power, state and federal, the exertion of any restraint on the free exercise of religion").  Because they allege no facts showing that Officer Leija restrained them from the exercise of their religious beliefs, Plaintiffs fail to state a cognizable First Amendment free exercise claim.

Likewise, Plaintiffs have not alleged that Leija denied or abridged their right to vote as provided by the Fifteenth Amendment. U.S. Const. amend XV.  Moreover, Plaintiffs state no facts to show that Leija is a federal actor and is therefore, subject to the provisions of the Fifth Amendment.  *See* Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000) (noting that "[t]he Fifth

---

[35] Document No. 11 at 5.

Amendment applies only to violations of constitutional rights by the United States or a federal actor").

Without sufficient factual matter, Plaintiffs fail to state a claim for relief under the First, Fifth, Sixth, or Fifteenth Amendments. *See* Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009). Accordingly, Defendant Leija is entitled to qualified immunity on Plaintiffs' claims under the First, Fifth, Sixth, and Fifteenth Amendments.

Plaintiffs allege Officer Leija violated the Fourteenth Amendment by giving them excessive tickets and sealing all their machines.[36] Specifically, Plaintiffs allege that "[f]rom February 16, 2008, to the end of the year, Officer Leija "occasionally stopped by with a unit . . . [to] check[] on complaints and always walked out with no less than 60 citations issued."[37] Plaintiffs indicated that they "received the same citations for the same problem every time Officer Leija stopped by to check on complaints."[38] They claim that on one occasion, Leija mocked their

---

[36] Document No. 12 at 2.  In an unincorporated paragraph, Plaintiffs allege that Leija violated their rights "to be free from discrimination in states [,] to have due process of law, [and] to have equal protection of the law."  Document No. 11 at 7.

[37] Document No. 11 at 5.  Plaintiffs allege that "[i]t was clear from the beginning that the officers were intent on closing Plaintiffs' business because they were of Vietnamese Origin.  The police officers made these comments many times."  Id. at 3.

[38] Id. at 5.  Plaintiffs also allege that "[e]ach time the police came to Plaintiffs' business they issued anywhere from 20 to 60 different citations.  The majority of the citations were bogus

Buddha statue and joked with patrons about Plaintiffs' religion, until another officer told him to stop.[39]   After Plaintiffs' business had closed, Officer Leija asked a nearby business owner whether Plaintiffs had reopened their business and commented that he would kick "all the Vietnamese business owners [out] of that area."[40]   Plaintiffs took offense at this racist remark because they are Vietnamese business owners and concluded that "Officer Leija clearly made it his mission to close the Plaintiffs' business on the basis that Plaintiffs were Vietnamese nationals."[41]

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999).  Where the nature of state action involves discretionary decision-making and the decision-maker engages in selective enforcement or prosecution of the law based on membership in a protected class, the decision-maker's discriminatory classifications implicate basic equal protection concerns.  Engquist v. Ore. Dep't of Agr., 128 S. Ct.

---

and the officers spent little time if any 'inspecting the premises.'  They simply issued the same or similar citations without even seeing if the premises had been modified or 'repairs' from the officers' previous visit." Id. at 3.

[39] Id. at 5.

[40] Id.

[41] Id. at 6.

2146, 2154 (2008); *see also* <u>Bryan v. City of Madison, Miss.</u>, 213 F.3d 267, 277 (5th Cir. 2000).

Plaintiffs' allegations, accepted as true, do not necessarily give rise to an inference that Officer Leija applied a particularly scrutinizing eye toward ordinance violations in their establishment because of their national origin or religion, thereby explaining the large number of bogus citations issued to Plaintiffs. Plaintiffs' pleadings show that Leija stopped by the game room occasionally to follow up on a complaint, that he issued approximately 60 citations on each occasion for the same code violations, on one occasion he mocked their religious beliefs during an inspection, and he made a "racist" comment to a third party after Plaintiffs had closed their business. Although Plaintiffs allege that most of the citations issued by Officer Leija were bogus, they do not indicate that any of the citations were dismissed or invalidated; nor do they indicate that they actually made any of the repairs for which they were cited. Furthermore, Plaintiffs state no facts showing that Officer Leija treated them differently than he treated other local business operators similarly situated. Plaintiffs, therefore, fail to state a cognizable Equal Protection claim.[42]

---

[42] Because the nature of Plaintiffs' alleged constitutional violation falls within Equal Protection Clause analysis, Plaintiffs' substantive due process claim is subject to the same analysis. *See* <u>Lindquist v. City of Pasadena, Tex.</u>, 525 F.3d 383, 387 (5th Cir. 2008) (quoting <u>Cty. of Sacramento v. Lewis</u>, 118 S.Ct. 1708, 1714 (1998) for the proposition that "[w]here a particular Amendment provides an explicit textual source of

Even if Plaintiffs had successfully stated a claim under the Fourteenth Amendment, Defendants are correct that adjudication of Plaintiffs' § 1983 claim for selective application of the law based upon either their race, national origin, or religion, in violation of their equal protection rights, would necessarily impugn their conviction on the citation involved in Cause No. 2008 NT 0419679, and thus is barred by the "favorable termination rule" announced by the Supreme Court in Heck v. Humphrey, 114 S. Ct. 2364, 2372-73 (1994).[43]  The favorable termination rule of Heck provides that "to recover damages for an allegedly unconstitutional conviction or imprisonment, or some other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been"

---

constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims").  Therefore, to the extent that Plaintiffs allege a substantive due process claim, such claim is subject to dismissal for failure to state a claim.

To the extent that Plaintiffs allege a procedural due process violation, they fail to state a claim because their pleadings reflect that they unsuccessfully challenged one citation in municipal court.  The complaint provides no basis to infer that Plaintiffs were ever denied access to court to challenge other citations.  See Woodard v. Andrus, 419 F.3d 348, 351 (5th Cir. 2005) (noting that "a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy").  Based on the foregoing, the Court finds that Plaintiffs fail to state a cognizable claim under the Fourteenth Amendment.

[43] Document No. 36 at 12-13.

invalidated.   Heck, 114 S. Ct. at 2372.   The complaint must be
dismissed if "a judgment in favor of the plaintiff would necessarily
imply the invalidity of his conviction or sentence," unless the
plaintiff can show that the conviction or sentence has already been
reversed on direct appeal or impaired by collateral proceedings.
Id.  The purpose of this requirement is to avoid parallel litigation
of probable cause and guilt.  Id. at 2371.  "It also prevents the
claimant from succeeding in a tort action after having been
convicted in the underlying criminal prosecution, which would run
counter to the judicial policy against creating two conflicting
resolutions arising from the same transaction." Gilles v. Davis,
427 F.3d 197, 209 (3rd Cir. 2005) (apply Heck to individual who has
no recourse under habeas statue).  "Heck's bar applies to both
custodial and non-custodial § 1983 plaintiffs." Walker v. Munsell,
281 Fed. Appx. 388 (5th Cir. 2008) (citing Randell v. Johnson, 227
F.3d 300, 301–02 (5th Cir. 2000)).  Although the Fifth Circuit has
not ruled on the issue, at least three district courts in this
Circuit have addressed the applicability of Heck to convictions of
municipal ordinance citations. *See* Cooper v. City of Plano, Civil
Action No.4:10cv689, 2011 WL 4344187 at *6 (E.D. Tex. Aug. 19, 2011)
(applying Heck bar to misdemeanor conviction of city ordinance),
*rec. adopted*, 2011 WL 4344186 (E.D. Tex. Sept. 14, 2011); Cormier
v. Lafayette City Parish Consol. Gov't, Civil Action No.6:09cv0703,
2011 WL 5412960 at *6 (W.D. La. Nov. 8, 2011) (analyzing whether

<u>Heck</u> bars conviction of city ordinance for disorderly conduct); <u>Collins v. City of Hazelburst</u>, 151 F. Supp. 2d 749, 751 (S.D. Miss. 2001) (suggesting in dicta that <u>Heck</u> bars claim for damages in civil rights action brought by person convicted of violating a city ordinance prohibiting beer-permit holders from admitting minors to their establishments).

Plaintiffs' pleadings reflect that they were convicted of at least one violation of the City of Houston Municipal Code with respect to food establishments.[44]  Section 20-19 of the City of Houston Food Establishment Code provides that a "person who violates any provision of this article, or rule, or regulation promulgated by the health officer, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than $50.00 nor more than $2,000.00." CODE OF ORDINANCES, CITY OF HOUSTON, TEXAS (FOOD ESTABLISHMENT CODE § 20-19(c)).  State law provides that a person convicted of violating a city ordinance in a municipal court may appeal the conviction to a county criminal court of law.  *See* TEX. CODE CRIM. PROC. ANN. art. 44.17 (Vernon 2006).  Given the nature of municipal ordinance conviction and the opportunity and means by which to challenge the conviction, the favorable termination rule of <u>Heck</u> applies to Plaintiffs' municipal ordinance conviction.

Plaintiffs allege that Officer Leija was a bad cop when they received that conviction because he testified untruthfully about the

---

[44] Document No. 11 at 4.

location of the air vent at the trial in the City of Houston
Municipal Court Number 5.[45]  Plaintiffs do not allege, however, that
their conviction in Citation Number 2008 NT 0419679 has been
reversed on direct appeal or invalidated in any way.  Therefore, any
relief on their allegation of perjury is barred by <u>Heck</u>.  *See*
<u>Williams v. Martinez</u>, 74 Fed. App'x 406 (5th Cir. 2003) (<u>Bivens</u>
claim alleging perjury that resulted in conviction implied
invalidity of plaintiff's conviction and was barred by <u>Heck</u>).[46]

Plaintiffs further label the "majority" of the citations as
"bogus," and assert that they "performed all the requirements to
have the business open and operating as required by the law at all
times," thereby, implicitly challenging the factual basis of
the citation.[47]  However, granting relief on Plaintiffs' equal
protection claim would necessarily impugn their conviction on any
issued citation in this case.  *Cf.* <u>Yick Wo v. Hopkins</u>, 6 S. Ct.
1064, 1073 (1886) (upon finding that an ordinance was selectively
enforced against Chinese nationals in violation of the Fourteenth
Amendment, holding that "the imprisonment of the petitioners is

---

[45] Document No. 11, page 4.  Plaintiffs claim that Leija
testified that the vent was on the ceiling when in reality it was
on the side of the wall.  <u>Id.</u>

[46] *See* <u>Little v. Butler</u>, 848 F.2d 73, 76 (5th Cir. 1988)
(inconsistencies in witnesses' testimony at trial are to be
resolved by trier of fact and do not suffice to establish that
certain testimony was perjured).

[47] <u>Id.</u> at 3, 6.

therefore illegal, and they must be discharged"). Plaintiffs do not allege that their conviction on any municipal ordinance citation has been invalidated in any way.   Therefore, to the extent that Plaintiffs challenge any conviction on any municipal ordinance citation as a violation of their right to equal protection, such claims are barred by Heck.  *See* Bazemore v. Junker, Civil Action No.3:10cv0720-B, 2010 WL 2404311, at * 1-2 (N.D. Tex. May 3, 2010), *rec. adopted*, 2010 WL 2404308 (N.D. Tex. Jun. 15, 2010) (dismissing § 1983 claims that the convicted plaintiff was "selectively prosecuted by the government because of his race" because the prosecutors were immune from suit and because Heck barred the claims); Rogers v. Ill. Dep't of Corrs., Special Evaluation Unit, 160 F. Supp. 2d 972, 977 (N.D. Ill. 2001) (holding that Heck applied to "selective prosecution" claims under § 1983).

And even if Plaintiffs' equal protection claims were limited only to citations not yet adjudicated, prevailing on those claims would nonetheless require findings of facts inherently inconsistent with their prior conviction because Plaintiffs' equal protection claim is based on the same set of facts common to *all* of the citations.  This makes Heck equally applicable to the *entirety* of Plaintiffs' claims.  *See* McCann v. Neilsen, 466 F.3d 619, 621-22 (7th Cir. 2006), *quoted in part in* Bush v. Strain, 513 F.3d 492, 498 n.14 (5th Cir. 2008) ("[A] plaintiff's claim is Heck-barred despite its theoretical compatibility with his underlying conviction if

specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction . . . ."). Simply put, Plaintiffs' allegations, taken in context and assumed to be true, affirmatively demonstrate that there is no basis on which to distinguish Officer Leija's motives in issuing the citation upon which Plaintiffs were adjudged guilty from the other citations he issued: Plaintiffs allege that Leija's *entire* course of conduct in issuing hundreds of like citations was racially or religiously motivated to drive all Vietnamese in the area--including Plaintiffs--out of business.  To prevail on this theory would require Plaintiffs to show that Officer Leija's policing of their business, and his concomitant issuance of all the citations arising therefrom, was motivated by Plaintiffs' race or national origin or religion.  *See* McCann, 466 F.3d at 621-22 ("It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, Heck kicks in and bars his civil suit." (quoting Okoro v. Callaghan, 324 F.3d 488, 490 (7th Cir. 2003))).

22

D.   Municipal Liability

Plaintiffs further claim that the City of Houston failed to train, supervise or discipline Officer Leija, and failed to investigate the shut down of their business as a result of Officer Leija's conduct.[48]

"Municipal liability for civil rights violations under Section 1983 is based on causation rather than *respondeat superior*." Bolton v. City of Dallas, 541 F.3d 545, 548 (5th Cir. 2008).   When a municipal actor executes a government's policy or custom that inflicts a constitutional injury, the municipality as an entity may bear responsibility under § 1983.   *See* Monell v. Dep't of Soc. Servs. of New York, 98 S. Ct. 2018, 2037-38 (1978).   Municipal liability under § 1983 claim for a constitutional violation requires proof of (1) a policy maker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom.   These three elements are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.   Id.   In the absence of a constitutional violation, the question of municipal liability is moot.   City of Los Angeles v. Heller, 106 S. Ct. 1571, 1573 (1986).

---

[48] Document No. 12 at 3-4.

To establish a municipality's liability for a constitutional tort, the plaintiff must show first, that the municipality adopted a policy with "deliberate indifference" to its known or obvious consequences, and second, that the municipality was the "moving force" behind the constitutional violation.  City of Canton, Ohio v. Harris, 109 S. Ct. 1197, 1205 (1989).  Since Monell, the Fifth Circuit has defined "official policy" as:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Nobby Lobby, Inc. v. City of Dallas, 970 F.2d 82, 92 (5th Cir. 1992).  As to deliberate indifference, courts have generally held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a

24

shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, 109 S. Ct. at 1204-05; Baker v. Putnal, 75 F.3d 190, 200 (5th Cir. 1996); Valle v. City of Houston, 613 F.3d 536 (5th Cir. 2010); Synder v. Trepagnier, 142 F.3d 791, 798-99 (5th Cir. 1998); *see also* Hobart v. City of Stafford, 784 F. Supp. 2d 732 (S.D. Tex. 2011) (finding plaintiffs had sufficiently alleged a failure to train).   The same rationale applies to failure to supervise and punish claims.  *See* Piotrowski v. City of Houston, 237 F.3d 567, 581-82 (5th Cir. 2001) (failure to investigate and discipline police officers after family made several complaints against them).  Stated another way, to establish deliberate indifference, a plaintiff must show at least a pattern of violations (fairly similar to what ultimately transpired) so that the failure of the city to respond with different training, better supervision, or punishment reflects a deliberate or conscious choice to endanger constitutional rights.  *See* Valle, 613 F.3d at 547; Hobart, 784 F. Supp. 2d at 751.

Plaintiffs fail to allege facts that would support a § 1983 municipal liability claims against the City of Houston.  They do not state a viable constitutional violation, reference any formal policy statements, ordinances, regulations, or decisions, or identify any pattern of similar incidents that seem to be consistent with an informal policy with respect to training, supervision, investigation, or discipline.  Moreover, Plaintiffs state no facts

that would give rise to an inference that any policy was adopted or enforced with deliberate indifference.

Accordingly, Plaintiffs' claims against the City of Houston are subject to dismissal.

E.    State Law Claims

Plaintiffs do not contest the City's request for dismissal of their state tort claims.[49]   Indeed, Plaintiffs failed to allege facts falling within the City's limited waiver of sovereign immunity found in the Texas Tort Claims Act.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A,(2) (Vernon 2005) (requiring personal injury to "arise[] from the operation or use of a motor-driven vehicle or motor-driven equipment," or to be proximately caused "by a condition or use of tangible personal or real property" for the governmental unit to be liable).

Plaintiffs also appear to assert a claim under § 71.001 *et seq.* of the Civil Practice and Remedies Code for violation of the First and the Fourteenth Amendment.[50]   Section 71.001 lists definitions

---

[49] Document No.38.  Plaintiffs' Amended Complaint asserts tort claims only against the City.  *See* Document No. 12 at 4-5.  Had Plaintiffs also asserted these claims against Officer Leija, they would be subject to dismissal upon the City's request because suit against the City serves as an irrevocable election that "forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter."  TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a) (Vernon 2005).

[50] Document No. 12 at 3.

26

pertinent to the cause of action for "any injury that causes an individual's death" set out in § 71.002. This claim is subject to dismissal because Plaintiffs allege no deaths in their Amended Complaint.

Given the inadequacy of the pleading, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. A district court may decline to exercise supplemental jurisdiction if it has dismissed all the claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Although the general rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed[,]" Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992); Priester v. Lowndes County, 354 F.3d 414, 425 (5th Cir. 2004), the Supreme Court has counseled that district court's should examine factors such as economy, convenience, fairness, federalism, and comity in determining whether jurisdiction should be exercised. United Mine Workers v. Gibbs, 86 S. Ct. 1130, 1139 (1966). In light of the pleading deficiencies so apparent in the Amended Complaint, the Court finds that judicial economy and fairness compels the Court to decline jurisdiction over Plaintiffs' state law claims.

IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that the Amended Motion to Dismiss of the Defendants City of Houston and Mark Leija (Document No.36) is GRANTED, and Plaintiffs' Ngoc-Chi T. Huynh and Tai V. Nguyen's § 1983 claims against Defendants the City of Houston and Mark Leija are DISMISSED with prejudice for failure to state a claim pursuant to Rule 12(b)(6). Plaintiffs' state law tort claims are DISMISSED without prejudice for lack of jurisdiction.

All pending motions, if any, are DENIED.

This is a **FINAL JUDGMENT.**

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 12th day of December, 2011.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

28